## UNITED  STATES  DISTRICT  COURT  FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOSEPH PIERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ARATANA THERAPEUTICS, INC., WENDY | ) | |
| YARNO, CRAIG TOOMAN, CRAIG A. | ) | |
| BARBAROSH, DAVID L. BRINKLEY, | ) | |
| IRVINE O. HOCKADAY, JR., J.D., MERILEE | ) | |
| RAINES, LOWELL W. ROBINSON, ROBERT | ) | |
| P. ROCHE, JR., and JOHN W. VANDER | ) | |
| VORT, J.D., | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Joseph Pierson ("Plaintiff"), by his undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Aratana Therapeutics, Inc. ("Aratana" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Aratana, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Aratana by Elanco Animal Health Incorporated ("Elanco") and Elanco Athens, Inc. ("Acquisition Sub") (the "Proposed Transaction").

1

2.      On April 26, 2019, Aratana entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Acquisition Sub will merge with and into Aratana, with Aratana becoming a wholly-owned subsidiary of Elanco.

3.      Under the terms of the Merger Agreement, Aratana shareholders will receive: (i) .1481 shares of Elanco common stock plus the right to receive cash in lieu of any fractional shares of Elanco common stock; and (ii) one contingent value right ("CVR") representing the right to receive $0.25 in cash if the milestone is achieved, as set forth in the CVR Agreement, for each share of Aratana common stock owned (the "Merger Consideration").

4.      On May 30, 2019, in order to convince Aratana public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Aratana and Elanco; (ii) the valuation analyses performed by Aratana's financial advisor, Barclays Capital, Inc. ("Barclays"); and (iii) the non-disclosure agreements entered into by Aratana and multiple companies.

6.      The Proposed Transaction is expected to close in the 3rd quarter this year and the special meeting of the Company's shareholders to vote on the Proposed Transaction can be scheduled at any time.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and

until the material information discussed below is disclosed to Aratana's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Aratana's common stock trades on the Nasdaq Global Market, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Furthermore, Aratana has retained MacKenzie Partners, Inc. as its Proxy Solicitor, which is located in this District at 1407 Broadway, 27th Floor, New York, NY 10018.

## **PARTIES**

11.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Aratana common stock.

12.      Defendant Aratana is a public company incorporated under the laws of Delaware with principal executive offices located at 11400 Tomahawk Creek Parkway, Suite 340, Leawood, KS 66211. Aratana's common stock is traded on the Nasdaq Global Market under the ticker symbol "PETX."

13.      Defendant Wendy Yarno is, and has been at all relevant times, a director of the Company and Executive Chairman of the Board.

14.      Defendant Craig Tooman is, and has been at all relevant times, a director of the Company and its President and Chief Executive Officer.

15.      Defendant Craig A. Barbarosh is, and has been at all relevant times, a director of the Company.

16.      Defendant David L. Brinkley is, and has been at all relevant times, a director of the Company.

17.      Defendant Irvine O. Hockaday, Jr., J.D. is, and has been at all relevant times, a director of the Company.

18.      Defendant Merilee Raines is, and has been at all relevant times, a director of the Company.

19.      Defendant Lowell W. Robinson is, and has been at all relevant times, a director of the Company.

20.      Defendant Robert P. Roche, Jr. is, and has been at all relevant times, a director of the Company.

21.      Defendant John W. Vander Vort, J.D. is, and has been at all relevant times, a director

of the Company.

22.     The defendants identified in paragraphs 13 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Aratana, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23.     Aratana is a pet therapeutics company focused on the licensing, developing, and commercializing of biopharmaceutical products for companion animals. The Company's portfolio includes therapeutic candidates in development consisting of small molecule pharmaceuticals and large molecule biologics that target medical conditions in pets. The Company's lead product candidates in development include small molecules directed at treating osteoarthritis pain and inflammation, appetite stimulation, and post-operative pain.

24.     On April 26, 2019, the Board caused the Company to enter into the Merger Agreement with Elanco and Acquisition Sub.

25.     Pursuant to the terms of the Merger Agreement, Aratana shareholders will receive: (i) .1481 shares of Elanco common stock plus the right to receive cash in lieu of any fractional shares of Elanco common stock; and (ii) one contingent value right ("CVR") representing the right to receive $0.25 in cash if the milestone is achieved, as set forth in the CVR Agreement, for each share of Aratana common stock owned.

26.     According to the April 26, 2019, press release announcing the Proposed Transaction, which states in relevant part:

### Elanco Announces Agreement to Acquire Aratana Therapeutics
*Elanco announces investor call for 9:00 am today*

**GREENFIELD, Ind.** (April 26, 2019) Elanco Animal Health (NYSE: ELAN) today announced it has signed an agreement to acquire Aratana Therapeutics (NASDAQ: PETX), a pet therapeutics company focused on developing and commercializing innovative therapeutics for dogs and cats, and developer of the first-of-its-kind canine NSAID for osteoarthritis,

5

Galliprant®. Elanco has also signed a development and commercialization agreement with VetDC for Tanovea®-CA1, the first U.S. Food and Drug Administration (FDA) conditionally approved canine lymphoma treatment.

In conjunction with these agreements, Elanco also announced the formation of a commercial team dedicated to the veterinary specialty business focused on bringing new and innovative products to the growing veterinary specialty category. If the transaction is approved, the Aratana field force would transition into this commercial team.

Aratana Acquisition

Elanco has been a strong supporter of Aratana since its beginning, including investing as a limited partner in Cultivian, one of the venture capital funds that participated in Aratana's early financing rounds. The relationship continued in 2016 with a global agreement for the exclusive rights to develop, manufacture and commercialize Galliprant®, a first-of-its-kind canine NSAID osteoarthritis medicine. This transaction would allow Elanco to capture the full value of this important, growing product. Aratana further contributes two additional marketed products to Elanco's portfolio: Entyce®, the only FDA-approved veterinary therapeutic to stimulate appetite in dogs, and Nocita®, a long-acting local anesthetic that provides up to 72 hours of post-operative pain relief following certain surgeries in dogs and cats. We believe these products would benefit from Elanco's broader on-the-ground presence in the U.S. and the potential to pursue international approvals. In addition, Aratana has a solid pipeline of five product candidates in development for conditions ranging from atopic dermatitis and pain/inflammation to oncology.

"Aratana has been one of the most innovative start-ups in animal health, bringing breakthrough solutions to the market," said Jeff Simmons, president and chief executive officer of Elanco. "We look forward to putting greater energy behind these brands with our increased share of voice in the field while leveraging Aratana's strong presence in the specialty market to capitalize on new opportunities for key existing Elanco companion animal therapy brands. We believe the deal would bring greater value to veterinarians and pet owners, as well as both Elanco and Aratana shareholders."

"This proposed transaction acknowledges Aratana's contribution of pet therapeutics to the animal health industry, specifically recognizing our strong track-record as a drug developer and our field team's unmatched expertise delivering innovation to veterinary specialists," stated Craig Tooman, president and chief executive officer of Aratana. "As a newly independent, premier animal health company, we believe that Elanco would help expand our portfolio with their substantial resources and presence within the companion animal segment."

The acquisition is structured as a stock-for-stock transaction, with a cash contingent value right (CVR) of $0.25 to be granted to Aratana shareholders as of the closing date if capromorelin achieves certain sales levels before the end of 2021. Subject to the terms of the agreement, upon the closing of the transaction,

Aratana shareholders will receive 0.1481 shares of Elanco and one CVR for each share of Aratana. Shares to be issued for the acquisition represent approximately 2 percent of Elanco shares outstanding. Based on the exchange ratio and the closing prices from April 24, 2019, Aratana's shareholders would receive the number of Elanco shares equivalent to an implied value of $4.75 per Aratana share, representing a premium of approximately 40 percent, plus one CVR per Aratana share. This stock portion of the deal is valued at approximately $234 million, excluding the potential CVR payment, or up to $245 million with the CVR payment. The transaction is expected to close in the mid-year timeframe, but remains subject to customary closing conditions, including approval by Aratana shareholders and clearance under the Hart-Scott-Rodino Antitrust Improvements Act. The proposed acquisition has been unanimously approved by the Aratana board.

(Emphasis in original).

**The Proxy Omits Material Information**

27.     On May 30, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The special meeting of Aratana stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

28.     First, the Proxy fails to provide enough information regarding financial projections for the Company.  In particular, the Proxy fails to disclose: (i) all line items underlying Aratana's unlevered free cash flows; (ii) all line items used to calculate Aratana's EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.  *Id.* at 87-88.

29.     Second, the Proxy omits certain financial projections for Elanco.  The Proxy only

furnishes "certain limited financial projections for calendar year 2019 concerning Elanco." Proxy at 77.

30.     It is imperative for shareholders to be fully informed of the Company's and Elanco's financial projections because Barclays used these projections to render its fairness opinion. Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  is the Merger Consideration fair compensation given Aratana's projected cash flows?  Without the line items underlying Aratana's unlevered free cash flows, the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

31.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Barclays, but have omitted crucial line items and reconciliations.

32.     Third, the Proxy omits material information regarding Barclays' financial analyses.

33.     With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy is materially misleading and incomplete because it fails to disclose: (i) the projected terminal value of Aratana as of December 31, 2040; (ii) how the after-tax discount rates of 11% to 15% were selected; (iii) how

Barclays assumed a range of perpetuity growth rates of (3.00%) to 0.00%; and (iv) the number of diluted shares of Aratana common stock outstanding as of March 31, 2019. *Id.* at 80-81.

34.     These key inputs are material to Aratana shareholders, and their omission renders the summary of Barclays' *Discounted Cash Flow Analysis* incomplete and misleading.   As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, Aratana's shareholders cannot evaluate for themselves the reliability of Barclays' *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Barclays', and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

35.     With respect to Barclays' *Selected Precedent Transaction Analysis*, the Proxy failed to disclose the transaction values and financial multiples for each transaction used in its analysis. Proxy at 81.

9

36.     With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy fails to disclose: (i) the financial multiples and ratios of Aratana and the selected companies; (ii) each selected company's enterprise value to projected revenue for 2019 and 2020; and (iii) how Barclays selected a range of multiples of 4.0x to 6.5x to 2019 estimated revenues, and a range of 3.0x to 5.5x to 2020 estimated revenues. *Id.* at 82-83.

37.     Fourth, the Proxy states that Aratana entered into non-disclosure agreements that included standstill provisions, with at least seven companies.  However, the Proxy fails to disclose whether such agreements also contained a "don't ask don't waive" ("DADW") provision and whether those provisions had fallen away upon the execution of the Merger Agreement or if the provisions were still in effect. *Id.* at 62.

38.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

39.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a national

securities exchange or otherwise, in contravention of such rules and regulations as the Commission

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

any security (other than an exempted security) registered pursuant to section 78l of this title."  15

U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications shall not contain "any statement which, at the time and in

the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements

therein not false or misleading."  17 C.F.R. § 240.14a-9.

43.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-

9 if other SEC regulations specifically require disclosure of the omitted information.

44.     Defendants have issued the Proxy with the intention of soliciting the Company's

common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants

reviewed and authorized the dissemination of the Proxy, which fails to provide critical information

regarding, amongst other things: (i) financial projections for Aratana and Elanco; (ii) the valuation

analyses performed by Aratana's financial advisor, Barclays Capital, Inc. ("Barclays"); and (iii) the

non-disclosure agreements entered into by Aratana and multiple companies.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material

facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by

virtue of their roles as officers and/or directors, were aware of the omitted information but failed to

disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore

negligent, as they had reasonable grounds to believe material facts existed that were misstated or

omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

46.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Barclays reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Barclays, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Barclays' analyses in connection with their receipt of the fairness opinions, question Barclay as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved

in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

48.     Aratana is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

49.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Aratana within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aratana, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 6, 2019                              **Monteverde & Associates PC**

                                                  _/s/ Juan E. Monteverde_
                                                  Juan E. Monteverde (JM-8169)
                                                  The Empire State Building
                                                  350 Fifth Avenue, Suite 4405
                                                  New York, NY 10118
                                                  Tel:(212) 971-1341
                                                  Fax:(212) 202-7880
                                                  jmonteverde@monteverdelaw.com

                                                  *Attorneys for Plaintiff*